**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| 42 WEST LLC,<br><br>                    Plaintiff,<br><br>v.<br><br>ALEXANDER S. GOULD a/k/a ALEX GOULD,<br><br>                    Defendants. | **Civil Action No.**<br><br>**COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff, 42West LLC ("42West" or "Company"), by and through its attorneys, Calcagni & Kanefsky LLP, by way of Complaint against Defendant Alexander S. Gould a/k/a Alex Gould ("Gould" or "Defendant"), alleges as follows:

<u>**NATURE OF THE ACTION**</u>

1.      42West brings this action against Gould seeking monetary damages for fraudulent inducement and breach of contract. Over the course of months, Gould induced 42West into providing publicity services to him, to minimize the public impact of Gould's settlement with the Securities Enforcement Commission ("SEC") regarding its investigation into misappropriation of funds. Gould employed a variety of misrepresentations and false statements with regard to 42West, designed to assure 42West that it would be paid for its services. Whereas, at all times, Gould had no intent to pay 42West and indeed has failed to remit payment to-date. 42West worked assiduously for Gould – researching the filing, creating messaging for his personal and business stakeholders, interfacing with press, advising Gould with respect to negative press, dealing with the fallout from the SEC's announcement of his settlement, and ultimately limiting the reporting of his SEC settlement to one obscure article. Gould reaped the benefits of 42West's efforts without making any payment. Gould misrepresented to 42West that he had initiated wire transfers and/or

remitted payment by check on multiple occasions. In further acts of inducement, Gould misrepresented his professional activities and fabricated additional potential projects for 42West in the future.

2. 42West seeks to recover compensation rightfully owed to it as a result of Gould's breaches and violations, as well as consequential damages resulting therefrom.

3. 42West also seeks an award of punitive damages to deter and punish Gould for his brazen abuse of and disregard for his contractual obligations.

## PARTIES

4. Plaintiff 42West LLC is a New York corporation with its principal place of business in New York, New York.

5. Defendant Alexander S. Gould a/k/a Alex Gould is a United States citizen domiciled in California, and residing in Menlo Park, California.

6. Non-party Amy Andersen is, upon information and belief, a United States citizen domiciled in California and residing in Menlo Park, California.

7. Non-parties Susan S. Gould and Richard B. Gould are, upon information and belief, United States citizens domiciled in Pennsylvania, and residing in Lafayette Hill, Pennsylvania.

## JURISDICTION

8. Jurisdiction is proper under federal diversity jurisdiction, 28 U.S.C. § 1332, as the parties are completely diverse in citizenship and the amount in controversy exceeds $75,000.00.

9. Venue is proper in the United States District Court for the Southern District of New York under 28 U.S.C. § 1332(a), because 42West's principal place of business is located within this district, and a substantial portion of the events and occurrences, including the retention by Gould of 42West and the exchange of substantial written and telephone communications at issue herein, took place in and/or were received in this District.

## FACTUAL ALLEGATIONS

10. In or about June 2020, Gould, a Stanford University Economics lecturer and Venture Capitalist, contacted 42West to obtain its expertise in crisis management and public relations ████████████████████████████████████████. When Gould engaged 42West's services, ████████████████████████████████████████████████████████████████████████████████████████.

11. 42West shared a draft Letter of Agreement ("LOA") with Gould prior to July 1, 2020. Under the guise of seeking privileged protection for 42West's publicity services, Gould initially refused to sign the LOA.

12. On July 13, 2020, Gould represented to 42West that he would seek an attorney to draft an agreement that would address his privileged communications concerns. The following day, Gould informed 42West that he planned to contact law firms ████████████ to discuss his privilege concerns.

13. On or about July 15, 2020, Gould and 42West executed a Letter of Agreement. A true and correct copy of the LOA is attached hereto as <u>Exhibit A</u>.

14. Pursuant to the July 15, 2020 LOA, 42West would provide publicity services beginning July 1, 2020 and ending September 31, 2020 for a fee of $25,000.00 per month plus documented out-of-pocket expenses. The LOA expressly stated that "[p]ayment of both the fee and the [out-of-pocket] expenses, if any, is due upon receipt of the invoice."

15. On July 17, 2020, Gould received the first of three $25,000.000 invoices. The invoice for the publicity services rendered in August was sent to Gould on August 11, 2020. The final invoice under the July 15, 2020 LOA was sent on September 8, 2020.

16. The July and August invoices were sent to Gould via e-mail at his Stanford.edu e-mail address. Gould utilized this e-mail to communicate with 42West in June, July, and August

2020.

17. On August 19, 2020 42West updated Gould's e-mail address from the Stanford account to a goldstarventures.vc account. At 9:43 a.m. Gould was informed that he would receive the July and August invoices via e-mail.

18. On August 20, 2020 at 2:25 a.m., Gould replies, "Got it, thanks! I didn't see payment instructions / Should I just send a check?"

19. On September 8, 2020 Gould forwarded ▇▇▇▇▇▇▇▇▇▇▇▇ from his Stanford e-mail account.

20. Despite Gould's failure to pay his invoices, 42West continued to perform their publicity services based on Gould's misrepresentations regarding bank wires and checks that had been mailed to 42West's Finance Department.

21. Despite having previously acknowledged receipt of the July and August invoices on August 20, 2020, on September 16, 2020, at 12:47 a.m. Gould e-mailed 42West from his goldstarventures.vc account claiming that he had not received an invoice for their services. He went on to state that he checked his "spam" and did not "see anything."

22. A short time later, at 9:51 a.m. 42West e-mailed the July, August and September invoices to Gould at his goldstarventures.vc e-mail address. At 12:54 p.m., Gould acknowledged receipt of the invoices.

23. Throughout the term of the July 15, 2020 LOA, 42West provided publicity services for Gould by drafting messaging for Gould to address ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. 42West engaged an online reputation management firm to 42West continued to provide their publicity services to Gould in October 2020 ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇.

24. On October 14, 2020, 42West informed Gould via e-mail that its accounting team had not received a payment for the services rendered between July 1, 2020 and September 30, 2020. Gould responded immediately and stated that "the first Months were sent over a month Ago. I haven't sent the third month yet. I can get confirmations for you if needed."

25. Gould also represented to 42West that he controlled the funds of his parents, Susan S. Gould and Richard B. Gould. This representation was seemingly designed to assure 42West of his ability to pay for 42West's services. Gould further represented that ███████████ ███████████████████████████████████████████.

26. When questioned via e-mail by 42West's Accountant about the method of payment, Gould continued his deception and stated that $50,000 was sent to 42West in a "single check mailed to the initial address from the engagement letter. I just checked my account and they have NOT been cashed. I am happy to cancel the checks and do a wire – does that make sense?"

27. The following day, on October 15, 2020, 42West informed Gould that it had not received his check, asked Gould to cancel the check and wire the payment, and shared the Company's bank wire instructions. Gould replied and stated, "ok got it, will do".

28. Gould agreed to engage 42West to continue their publicity services from October 1, 2020 and October 31, 2020 for a fee of $10,000.00 per month with the "option for ongoing, plus documented out-of-pocket" expenses. 42West shared the LOA with Gould via e-mail for his signature on October 19, 2020. A true and correct copy of the LOA is attached hereto as <u>Exhibit B</u>.

29. Relying on Gould's false statements, 42West continued to provide publicity services to Gould for the remainder of October 2020.

30. On or about Friday, October 30, 2020 Gould informed 42West that he would wire

$85,000.00 that day as a payment for their services.

31. Gould confirmed via text message at 4:24 p.m. on October 30, 2020, that the wire was sent from Fidelity Bank to 42West for the full amount as payment for their services.

32. When 42West failed to receive the $85,000.00 payment, the Company e-mailed Gould on November 4, 2020 and informed him that they would halt their publicity services "until this is resolved."

33. Gould responded to 42West's e-mail with a text message stating that he was in a meeting and had initiated a test wire online for $1,000.00 from his Silicon Valley Bank account, utilizing the wire instructions 42West has provided. He also stated that he e-mailed his bank to request a confirmation number for the $85,000.00 wire transfer.

34. Hours later 42West received the $1,000 wire transfer from Gould who then emailed the Company stating that "if I don't have [the wire transfer reference number from Fidelity Bank] by 1pm pacific, I will proceed with remainder 84k from SVB as we know you have successfully received a wire from that account."

35. The following day, at 9:01 a.m. on November 5, 2020, Gould e-mailed 42West stating that he wired the remaining $84,000.00 to 42West "at 1pm yesterday and am watching it from this side – i see it pending on this side."

36. 42West responded at 3:27 p.m. to inform Gould that the wire had not been received and requested the wire transfer confirmation number. Gould then sent a screenshot of the wire transfer information to 42West and it was revealed that the wire was scheduled to be sent on November 6, 2020.

37. As of the date of the filing of this Complaint, 42West has received no such wire-transfer.

38. In a series of text messages to 42West on November 27, 2020, Gould made further false representations to 42West. He represented that his parents were traveling to a Wells Fargo bank location in Philadelphia, Pennsylvania, to wire $85,000.00 to the Company. A true and correct copy of the text messages is attached hereto as <u>Exhibit C</u>.

39. As an initial matter, this statement revealed that Gould's prior representations, regarding having control of his parents' funds ███████████████████████ ███████, were patently false.

40. This statement regarding Gould's parents was also yet another attempt to fraudulently induce 42West into providing publicity services to Gould.

41. 42West followed up with Gould on November 27, 2020, seeking confirmation of the wire transfer. In response, Gould attempted to delay – representing that his parents were "en route" to the bank. Gould further replied that his parents "should have" the wire receipt 42West requested, and would respond to 42West when he heard from them.

42. Gould then stated that he had "gotten to the bottom of this issue and it will be resolved…"

43. Still, as of the date of the filing of this Complaint, 42West has received no such wire-transfer.

44. Throughout the several months of services provided by 42West, Gould ████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████ - all of which were designed to induce 42West into providing, and continuing to provide, services to 42West despite his non-payment.

45. For example, on September 28, 2020, Gould made statements about his upcoming

███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
█████████████ .

46. Gould left 42West with no choice other than to escalate this matter through legal counsel.

47. 42West proposed a Settlement Agreement and Confession of Judgment, with Personal Guarantees, to Gould through counsel.

48. On January 5, 2021, Gould emailed counsel for 42West a revised and signed Settlement Agreement and Mutual Release (the "Settlement Agreement"). A true and correct copy of the email with the revised and executed Settlement Agreement is filed herewith as <u>Exhibit D</u>. Gould stated in the email that the signed Settlement Agreement was his "counter offer".

49. On January 6, 2021, Gould emailed an executed Confession of Judgment to 42West through counsel, which stated that the Confession of Judgment was part of Gould's counteroffer. A true and correct copy of the email with the Confession of Judgment is filed herewith as <u>Exhibit E</u>.

50. On January 29, 2021, 42West countersigned Gould's proposed Settlement Agreement and transmitted the executed version to Gould via e-mail. A true and correct copy of the email communication with the executed Settlement Agreement is attached hereto as <u>Exhibit F</u>.

51. Among other things, the Settlement Agreement required Gould to pay to 42West the total sum of $84,000.00 via wire transfer. Pursuant to the Settlement Agreement, Gould was to remit $50,000.00 to 42West "no later than January 31, 2021," and remit $34,000.00 "no later

than March 2021." The Settlement Agreement included a default provision that required Gould to make an immediate "Default Payment" of "not less than $99,000" in the event of "any failure by Gould to make fully or timely any payment."

52. Consistent with the Settlement Agreement, Gould also agreed to provide a fully executed Personal Guarantee from Susan S. Gould and Richard B. Gould, as well as a series of disclosures regarding sums he pledged to pay 42West from Stanford University.

53. On February 1, 2021, 42West contacted Gould through counsel to confirm that the $50,000.00 wire transfer was made as required on January 31, 2021. Gould responded and stated, "I got your email over the weekend and will make arrangements - there is no way to send a wire on a Sunday." A true and correct copy of the email communication with the Notice of Default is attached hereto as Exhibit G.

54. 42West issued a Notice of Default to Gould on February 2, 2020, in which 42West offered to refrain from proceeding with its Default remedies if Gould made payment in full by Friday, February 5, 2021. A true and correct copy of the email communication with the Notice of Default is attached hereto as Exhibit H.

55. Gould sent an e-mail to 42West on February 5, 2021 asking if "the full settlement is 84k or 99k? I know the judgment is 99k but I am confused about the updated settlement." 42West responded through counsel and informed Gould that 42West would refrain from proceeding with the Default and accept performance of the remaining terms of the Settlement Agreement if the requests made on January 29, 2021 were met that day (February 5, 2021). 42West attached a copy of the Default Notice to this communication. A true and correct copy of this email communication is attached hereto as Exhibit I.

56. On February 7, 2021, 42West sought confirmation from Gould that the wire transfer

for $50,000.00 was made on February 5, 2021.

57. As of the date of this filing, Gould has not complied with the terms of his proposed Settlement Agreement.

58. In light of the forgoing, Gould had no intention to comply with the Settlement Agreement and Confession of Judgment at any time.

59. Gould induced 42West into signing the Settlement Agreement for the purpose of delaying his obligation to pay for 42West's services, and, upon information and belief, to engage in further asset planning to render himself beyond the reach of judgment creditors.

60. Among other things, Gould transferred his primary residence at 1994 Valparaiso Avenue, Menlo Park, California, to his wife Amy S. Anderson, on or around July 5, 2019 ███ ███████████████████. The property is valued in the range of $3,760,000.00.

61. In light of the series of false statements and misrepresentations made by Gould, it is evident that he never intended to fulfill his obligations under the LOAs or the Settlement Agreement from inception.

62. Gould fraudulently induced 42West into providing and continuing to provide good and valuable services to Gould, and to forbear from pursuing collection efforts against him, in reliance upon his substantial false statements regarding payment and other matters.

63. Pursuant to the terms of the Letters of Agreements, 42West was entitled to a total payment of $85,000.00 for services thereunder. $84,000.00 remains unpaid to-date.

64. Pursuant to the terms of the Settlement Agreement, Gould agreed to pay 42West an additional $15,000 in the event of a Default, to account for the additional financial harm 42West incurred as a result of Gould's actions. Gould further agreed to pay 42Wests' attorneys' fees and costs following execution of the Settlement Agreement and in any future proceeding, which would

include this litigation.

65. As a result, Gould is now indebted to 42West in an amount not less than $99,000.00, in addition to 42West's attorneys' fees and costs.

66. Gould agreed in the Settlement Agreement that, in the event of Default, 42West could proceed with any and all remedies available to it, including by relying on his admissions in the Confession of Judgment in court.

67. Gould further agreed in the Settlement Agreement that the Confidentiality Clause of the LOA would no longer remain in effect if 42West were to proceed with collection efforts or litigation.

68. Gould's failure to perform his obligations under the Settlement Agreement as set forth above constitutes a Default and a material breach of the Settlement Agreement, therefore excusing 42West from its obligations thereunder.

## COUNT I

### (BREACH OF CONTRACT)

69. 42West incorporates by reference each and every allegation set forth in the preceding Paragraphs above as if set forth fully herein.

70. The LOAs and the Settlement Agreement entered into by 42West and Gould are valid and enforceable contracts under New York law.

71. 42West performed any and all conditions of the LOAs and the Settlement Agreement and Gould accepted and benefited from the services performed by 42West.

72. Gould breached his contractual obligations under the LOAs and the Settlement Agreement by failing to fulfill his material obligations thereunder, including by failing to pay for 42West's publicity services and the additional financial harm suffered by 42West as a result of his actions, in an amount not less than $99,000.00.

73. 42West has repeatedly demanded payment and Gould has failed and refused to pay.

74. As a direct and proximate result of Gould's breach, 42West has been damaged in the amount to be determined at trial.

## COUNT II

### (BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING)

75. 42West incorporates by reference each and every allegation set forth in the preceding Paragraphs above as if set forth fully herein.

76. The July 15, 2020 Letter of Agreement between 42West and Gould contained implied covenants of good faith and fair dealing.

77. These implied covenants obligated Gould to refrain from committing any act that would deprive 42West of its right to receive the fruits of the contract, payment for their performance, including by fabricating check and wire transfers that would allow him to receive services that he had no intention of paying for.

78. Gould's misconduct described herein breached the implied covenant of good faith and fair dealing in connection with the LOAs and the monies owed pursuant to the agreement.

79. In particular, Gould induced 42West to continue to provide publicity services by feigning ignorance and confusion regarding the delivery of invoices and location of the nonexistent payments for 42West's services.

80. As a direct and proximate result of Gould's breach, 42West has been damaged.

## COUNT III

### (FRAUDULENT INDUCEMENT)

81. 42West incorporates by reference each and every allegation set forth in the preceding Paragraphs above as if set forth fully herein.

82. During negotiations regarding the LOAs and 42West's performance of the July 15,

2020 LOA, Gould made false representations to 42West, including that he intended to pay for 42West's services, that he could be trusted given his professional association with Stanford and other professional activities and relationships, that he had not received invoices, that he sent a $50,000.00 payment to the Company in early October 2020, that he sent an $85,000.00 payment on October 30, 2020, and that he sent an $84,000.00 payment on November 5, 2020.

83. Given the detail and lengths Gould went to materialize these false representations, 42West reasonably and justifiably relied on these representations, providing and continuing to provide services to Gould, and was induced into negotiations for the second October 7, 2020 Letter of Agreement with the express expectation of payment for the public relations services rendered. All of this done to 42West's detriment.

84. When Gould made these representations, he knew they were false, as was revealed over time with the consistent lack of payment, and the contradictions that surfaced regarding his professional activities.

85. As a direct and proximate result of Gould's fraudulent acts, omissions and misrepresentations, 42West has been damaged in an amount to be determined at trial.

## COUNT IV
### (*QUANTUM MERUIT*)

86. 42West incorporates by reference each and every allegation set forth in the preceding Paragraphs above as if set forth fully herein.

87. While awaiting execution of the October 7, 2020 Letter of Agreement, and at Gould's request, 42West in good faith provided Gould with continued public relations and crisis management services after the termination of the July 15, 2020 Letter of Agreement. Specifically, 42West provided Gould with targeted messaging for the investors in his former venture capital fund.

88. Gould accepted 42West's services freely.

89. 42West reasonably expected to receive compensation from Gould for those services.

90. The reasonable value of those services is at least $10,000.00.

91. Although 42West has demanded payment, Gould has failed and refused to pay such sum and the amount remains unpaid.

92. 42West has been damaged by Gould's non-payment.

## COUNT V
### (UNJUST ENRICHMENT)

93. 42West incorporates by reference each and every allegation set forth in the preceding Paragraphs above as if set forth fully herein.

94. Without executing the October 7, 2020 Letter of Agreement, and at the request of Gould (and to his benefit), 42West provided Gould with publicity services related to his SEC settlement as described above.

95. Under these circumstances, equity and good conscience demand that Gould give restitution for his receipt of the benefits 42West conferred, in the amount of the reasonable value of the services.

96. The reasonable value of those services is at least $10,000.00.

97. Although 42West has demanded payment, Gould has failed and refused to pay such sum and the amount remains unpaid.

98. 42West has been damaged by Gould's non-payment.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff 42West respectfully prays for the following:

a. On Count ONE, a judgment in an amount to be determined at trial;

b. On Count TWO, a judgment in an amount to be determined at trial;

c. On Count THREE, a judgment in an amount to be determined at trial, along with punitive damages;

d. On Count FOUR, a judgment in an amount to be determined at trial;

e. On Count FIVE, a judgment in an amount to be determined at trial;

f. On all Counts, Judgment for Plaintiff against Gould for reasonable attorneys' fees, costs, prejudgment and post-judgment interest; and

g. For such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

99. Plaintiff hereby demands a jury trial on all triable issues.

DATED: February 19, 2021                    CALCAGNI & KANEFSKY LLP

By: _____
Lauren M. Paxton, Esq.
Calcagni & Kanefsky, LLP
85 Broad Street, Suite 17031
New York, New York 10004
Phone: 862-233-8130
Fax: 862-902-5458
LPaxton@ck-litigation.com

*Counsel for Plaintiff 42West LLC*