UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x

42WEST LLC,

                        Plaintiff,      :      21-CV-1581 (OTW)

                      -against-     :      **OPINION AND ORDER ENTERING**

                                  :      **DEFAULT JUDGMENT**

ALEXANDER S. GOULD,     :

                                  :

                    Defendant.   :

------------------------------------------------------------x

**ONA T. WANG, United States Magistrate Judge:**

### I.    INTRODUCTION

I write to resolve Plaintiff's motion for sanctions and/or contempt.[1] (ECF 115). Following

proceedings before the Court (as described in more detail below), including the written

submissions of the parties, and giving these matters due consideration and deliberation, the

Court makes the following findings of fact and conclusions of law:

### II.    FINDINGS OF FACT

#### A.  Background and Procedural History

##### 1.  The Settlement Agreement

Plaintiff 42West ("**Plaintiff**") was engaged to provide public relations and crisis

management services in connection with Alexander Gould's ("**Defendant**") 2020 settlement

with the Securities and Exchange Commission (the "**SEC**"). (ECF 135-1 at ¶¶ 1, 10, 14). Plaintiff

provided the services; Defendant failed to pay for them. (ECF 135-1 at ¶¶ 1, 20–46). On January

---

[1] Plaintiff has previously filed motions for sanctions (ECF Nos. 62, 70), which were denied without prejudice.

29, 2021, the parties executed a Settlement Agreement (the "**Settlement Agreement**" or "**SA**")
which set forth, in relevant part, the total amount still due, provisions for installment payments,
and provisions for fees and penalties in the event of a default. (ECF 135-5 at ¶¶ 1–3). The
Settlement Agreement—which Defendant signed on January 5, 2021—provided for a $50,000
payment no later than January 31, 2021, and a $34,000 payment no later than March 2021.[2]
(ECF 135-1 at ¶ 51). No payments were made until November 2, 2021. (ECF 123 at 2).

**2.  The Complaint and Defendant's Pre-Settlement Agreement Promises to Pay**

On February 23, 2021, Plaintiff 42 West commenced this diversity action by filing a
complaint alleging breach of contract and fraudulent inducement, claiming that Defendant had
breached the settlement agreement. (ECF Nos. 7, 7-4). (*See also* ECF Nos. 135-1, 135-5).[3] The
Complaint detailed numerous specific misrepresentations that Defendant had made about
promised payments in September through October 2020:

- representing, on September 8, 2020, that he had control of his parents' money and
  that the SEC had frozen their accounts (ECF 135-1 at ¶ 25);

- claiming, on September 16, 2020, that he had not received past invoices, when he
  had (and previously had acknowledged receipt) (ECF 135-1 at ¶ 21);

- on September 28, 2020, making specific assertions about upcoming business
  ventures with specific people (ECF 135-1 at ¶ 45);

---

[2] Defendant had previously paid Plaintiff $1,000 in November 2020, which was credited to Defendant's
outstanding balance.

[3] The Complaint was initially filed under seal, but has since been refiled, with redactions applied
pursuant to Fed. R. Civ. P. 5.2(a) at ECF 135-1. (*See* ECF 134, Opinion & Order ordering refiling of the
Complaint unsealed). The Complaint is herein cited to at its public filing number.

2

- asserting, on October 14, 2020, that payments had been sent "over a month [a]go" (ECF 135-1 at ¶ 24);

- claiming, also on October 14, that $50,000 had been sent to Plaintiff in a "single check mailed to [Plaintiff]," and that "I just checked [his] account and they have NOT been cashed. I am happy to cancel the checks and do a wire . . . " (ECF 135-1 at ¶ 26);

- representing, on October 15, that he would wire the funds instead (ECF 135-1 at ¶ 27);

- informing Plaintiff, on October 30, 2020, that he would wire $85,000 to Plaintiff (ECF 135-1 at ¶ 30); and

- on the same day, confirming by text that a wire had been sent from Fidelity Bank for the full amount due (ECF 135-1 at ¶ 31).

No money, by check or wire, was received, and on November 4, 2020, Plaintiff informed Defendant that they would halt their publicity services until payment was made. This prompted another series of lies by Defendant:

- representing that he would request a confirmation number from Fidelity Bank for the purported $85,000 transfer, (ECF 135-1 at ¶ 33);

- wiring $1,000 from Silicon Valley Bank as a "test wire," and representing that, if he did not get confirmation that Fidelity Bank had wired $85,000, he would wire the remaining $84,000 from Silicon Valley Bank (ECF 135-1 at ¶ 34);

- telling Plaintiff on November 5, 2020, that he had wired $84,000 to Plaintiff "at 1pm yesterday and am watching it from this side–I see it pending on this side." (ECF 135-1 at ¶ 35);

- sending a screenshot of a wire transfer confirmation number on November 5, purporting to be the $84,000 payment, which was scheduled for November 6, 2020 and which was never received (ECF 135-1 at ¶ 36–37); and

- representing, on November 27, 2020, that his parents were en route to Wells Fargo Bank to wire $85,000 (ECF 135-1at ¶ 38 and ECF 135-4).

The promised wire of $85,000 never materialized.

### 3. Defendant Re-Engages Plaintiff in Settlement Discussions, Delaying Litigation for Three Months

On March 23, 2021, via ex parte email to the Court, Defendant represented that he was "in the midst of settlement negotiations," which he believed would "resolve within a month's time." (ECF 12). Evidently, negotiations did not resolve within a month's time. Indeed, two days later, Plaintiff filed a letter indicating that Defendant had misrepresented the status of settlement discussions, which were not ongoing. (ECF 13).

On April 23, 2021, again via ex parte correspondence with the Court, Defendant again represented that settlement negotiations were ongoing. (ECF 14). Plaintiff responded by email the same day, again stating that settlement discussions were not at all ongoing. (ECF 14). Indeed, Defendant admitted—again, via ex parte correspondence—that the purported "settlement discussions" consisted exclusively of unilateral correspondence from Defendant to Plaintiff on April 22. (ECF 14).

Defendant was given several extensions of time to answer until May 25, 2021, when Judge Marrero first threatened Defendant with default if he failed to respond to the Complaint within 21 days. (ECF 15). Twenty-one days later, on June 15, 2021, Defendant, acting *pro se*, filed his Answer. (ECF 16). The parties then engaged in mediation (unsuccessfully) and ultimately consented to magistrate judge jurisdiction on September 2, 2021. (ECF 22).

### 4. Defendant Makes $53,491 in Payments

On September 13, 2021, the Court entered a Civil Case Management Plan and Scheduling Order directing the parties to appear for an in-person status conference on November 3, 2021. (ECF 23). During the intervening months, the parties continued to discuss Defendant's promised payment of the amount owing.

Pursuant to discussions between the parties, Defendant had agreed to pay Plaintiff in full by October 8, 2021. (*See* ECF 115-8 at 2–5). (*See also* ECF 115-7). On October 9, 2021, Defendant emailed Plaintiff, representing that "he need[ed] a business day or two to send [the payment]" to Plaintiff, and stating that he "want[ed] to settle this and be done." (ECF 115-8 at 2). As of October 13, four days later, no payment had been made. (ECF 115-8 at 2).

On November 1, 2021, Plaintiff filed a status report in advance of the November 3 conference, in which it came to light that Defendant had advised Plaintiff that he was "unavailable for the conference due to international travel plans." (ECF 28). On November 1, 2021, Defendant filed a separate status letter, confirming that he would be "traveling internationally, departing the evening of Tuesday November 2 with arrival at [his] destination on Wednesday November 3, with one layover," which "travel plans came together relatively recently." (ECF 29). Defendant promised to provide proof of travel itinerary and purchased

airplane tickets "but was not willing to do so in a public electronic filing." (ECF 29).[4] Defendant also represented, *inter alia*: " . . . I fully intend to meet the missing material condition of the [settlement] agreement shortly – I have been working to do so today, and will continue in the morning tomorrow." (ECF 29).

In November 2021, the Court held several telephonic settlement calls in an attempt to finalize Defendant's performance under the SA. By November 22, 2021, Defendant had paid $43,491 toward his obligation under the SA. (ECF 123 at 2). Defendant made several representations about payment that were not on the record, but also represented[5] that he was actively seeking to complete his payment obligations under the SA.

On November 29, 2021, Defendant had not yet made all payments due, but suggested that they were forthcoming:

> Shipping delays and the holiday weekend exacerbated matters. Defendant relays that he now has the required device from his bank (an RSA SecurID Device) to fulfill his last remaining obligation as discussed. Defendant relays that he need only to activate the device by telephone with a bank representative, which Defendant relays that he has been trying to do since the bank opened today on the West Coast at noon ET. Defendant relays that he hopes to have that completed any time now, and then should be able to finalize the matter discussed. Defendant relays that he understands Plaintiff's desire to reopen discovery now, and he appreciates Plaintiff's patience up to this point. If the Court grant's [sic] Plaintiff's request, Defendant respectfully asks only that the Court be open to the Parties' communication soon thereafter that the matters discussed have been finalized and this case can be closed.

---

[4] Defendant did not submit any proof of travel to the Court, either in a public filing or ex parte submission.

[5] Defendant sought a one-day adjournment of a conference on November 23, 2021, "due to a bank update this morning regarding delivery of my token, which should take place sometime tomorrow." *See* Docket, Nov. 23, 2021 Letter from Defendant (no ECF docket number assigned).

(ECF 35 at 1) (Joint Status Letter Nov. 29, 2021). On November 29, 2021, Plaintiff sought to

begin discovery due to Defendant's failure to make any more payments toward settlement.

(*See* ECF 115). Defendant only made one more payment of $10,000, on December 17, 2021.

(ECF 123 at 2).

   **5.  Defendant Fails to Produce Discovery or Appear at a Status Conference**

   On November 30, 2021, the Court set a discovery deadline of January 11, 2022 and an

in-person conference on January 18, 2022. (ECF 36). By this time, Plaintiff had already served

Defendant with interrogatories and a request for production of documents. (*See* ECF Nos. 115-

9, 115-10 (respectively, Plaintiff's interrogatories and document requests, dated October 18,

2021)). Defendant provided limited responses to Plaintiff's interrogatories on December 31,

2021 (ECF Nos. 115-1 at ¶ 15, 115-12), but, as of January 27, 2022, had failed to produce any

documents in response to Plaintiff's discovery requests (ECF 115-14). (*See also* ECF Nos. 37,

38).[6] Upon Plaintiff's request, the discovery deadline was later adjourned to March 11, 2022,

and the conference to February 8, 2022, consequent to Defendant's failure to respond to

Plaintiff's discovery requests. (ECF Nos. 37, 38). On February 3, 2022, the parties filed a joint

status letter in which Plaintiff sought to proceed to depositions in light of Defendant's failure to

produce documents. (ECF 39).

   On February 8, 2022, the Court set an in-person status conference for February 16,

2022, in part to address Defendant's failure to produce documents. (ECF 40). In that order,

---

[6] To the extent that Defendant did respond to Plaintiff's interrogatories, his responses were so
inadequate as to essentially not respond at all. (*See generally* ECF 115-12) (for example, responding to a
request for relevant custodians, "I would assume you many my banks (for financial documentation), and
telecoms (for texts or emails)?").

Defendant was warned that "[i]n person attendance at the conference is mandatory," and threatened a second time with default and contempt under, *inter alia*, Rules 16(f) and 37(b), if he failed to appear at the in-person conference. (ECF 40).

Notwithstanding these warnings, less than 24 hours before the conference, Defendant requested to appear by Zoom or, in the alternative, to adjourn the conference to give Defendant "the time to make domestic arrangements" due to the "significant hardship to fly to New York [from Northern California] on what was relatively short notice." (ECF 42). Although Defendant referenced "[having] a small child," he stopped short of representing to the Court that childcare obligations were the reason he had failed to make arrangements to appear at the conference. *Id.* Notably absent from the request, however, is any indication that Defendant was fully, or even partially, responsible for said young child's care, what such "domestic arrangements" were or hoped to be, and why the "domestic arrangements" in place that apparently had enabled Defendant to make his international trip in early November on short notice were now unavailable three months later. (*See* ECF 42). Also absent was any indication that Defendant either made travel arrangements and "domestic arrangements" or sought to make such arrangements at any time between February 8 and February 16. (*See* ECF 42).

Notwithstanding Plaintiff's proposal to take depositions immediately without full document production, (ECF 39), Defendant represented that he was "willing to work quickly and in good faith this week with Plaintiff's counsel to start producing what is requested." (ECF 42) (emphasis in original). The evening before the conference, Defendant emailed a copy of ECF 42 to Chambers. (ECF 115-15). As of February 15, Defendant was still in California; he had made

no arrangements to travel to New York. The Court denied the request shortly thereafter. (ECF
43). Plaintiff appeared on February 16; Defendant did not.

After the parties appeared in person at a show cause hearing on March 10, 2022 to
address Defendant's failure to appear on February 16, the Court ordered Defendant to pay
Plaintiff **$671.50** in fees and costs by Monday March, 18, 2022, for Plaintiff's attendance at the
February 16, 2022 conference. (ECF Nos. 58, 64 at 10:11–21). At that time, the Court also
suggested that "the parties just agree on what's still owed and enter judgment on that
amount," or agree to a payment plan to collect the remaining amounts. (ECF 64 at 13:9–14:3).
Plaintiff also reminded the Court that under the SA's default provisions, Defendant was also
liable for Plaintiff's attorneys' fees. (ECF 64 at 15:3-7).

### 6. Defendant Repeatedly Fails to Participate in Discovery and Comply With Discovery Orders (March 2022–August 2023)

Plaintiff first moved for sanctions on March 15, 2022 (ECF 62) and Defendant responded
to that motion on March 29 (ECF 68). On April 19, 2022, Plaintiff again sought sanctions,
identifying several of Defendant's delays and insufficient discovery responses, and potential
misrepresentations to the Court concerning discovery and his intentions to pay the amounts
owed under the SA. (ECF 70 at 14–20).[7]

After renewing and concluding settlement discussions again, the Court reopened
discovery for a limited time for Defendant to provide a Real Estate Board of New York Financial

---

[7] For example, as discussed above, at the time of Plaintiff's filing, Defendant had not produced <u>any</u>
documents in response to Plaintiff's document requests and provided inadequate responses to
Plaintiff's interrogatories, both of which had been issued approximately six months earlier. *See supra*
§ II.A.5.

Disclosure Statement form (the "**REBNY Form**") to permit Plaintiff to assess Defendant's ability to pay the amounts still due and owing under the SA. (*See* ECF Nos. 73, 74). The format was selected to avoid the incomplete responses to Plaintiff's prior requests, identified in ECF 70 at 14–15. Accordingly, I explicitly directed Defendant to complete <u>the REBNY Form</u> and file <u>the REBNY Form</u> under seal no later than October 5, 2022. (ECF 76).

On October 5, 2022, Defendant filed a letter which purported to attach "a completed version of the [REBNY Form] with my notes and signature." (ECF 77). Other than entering "$0.00" for each category, and writing at the top, "PLEASE SEE ATTACHED FORM …," however, the REBNY Form itself was blank. Instead, Defendant had attached a two-page typed summary in which he provided numbers[8] corresponding to certain categories on the REBNY form. *Id.*

The parties engaged in more discussions, attempting to secure a more fulsome response from Defendant, as well as potentially revisiting settlement. (ECF Nos. 79, 80, 81). Ultimately, however, Plaintiff requested that the Court decide Plaintiff's original motion for sanctions in light of Defendant's insufficient financial disclosures and allegedly dilatory conduct. (ECF 81). In light of concerns about Defendant's compliance with his discovery obligations, the Court directed Defendant, by Order to Show Cause, to file a completed REBNY Form and explain his valuations of various assets, or else face a finding of default. (ECF 82).

Defendant again failed to comply with the Court's directive. Again, Defendant unilaterally decided to attach his own financial information to a blank REBNY form rather than

---

[8] Defendant's summary indicates that he earns approximately $300,000 annually from "consulting projects," and a "base salary (part-time)" of $6,000. (ECF 77 at 3). He represents that his liabilities include approximately $130,000 owed to Plaintiff. (ECF 77 at 4).

complete the form itself. (ECF 86). On December 2, 2022, the Court issued a third order to show cause, threatening Defendant with sanctions under Rule 16 and Rule 37(b)(2)(A)(i)-(vii). *See* Fed. R. Civ. P. 16(f); and Rule 37(b)(2(A)(i)–(vii).

After the December 2022 Order to Show Cause was issued, the parties appeared to be working together in the first several months of 2023 to correct the deficiencies that remained and to secure the remaining amounts with collateral, (*see, e.g.*, ECF Nos. 84, 86 ,88, 90, 92). These representations also led the Court to deny <u>without prejudice</u> Plaintiff's then-pending motions for sanctions (ECF Nos. 62, 70) because it seemed that the parties might continue to work to effectuate payment and resolve the case. (ECF 85).

On April 7, 2023, Plaintiff sought to resume discovery, in part because Defendant had not identified collateral that could be suitable or sufficient to secure the remaining settlement amount. (ECF 92). Defendant continued to assert that settlement discussions could still be productive, in part because he had believed, until recently, "that the asset, would be suitable as collateral in some form but that the exact structure is what still needed to be determined, and NOT that the asset itself would be unsuitable in any form." (ECF 92 at 2). Defendant reiterated his hope that he could propose an "alternative settlement proposal"; in response, Plaintiff noted that Defendant's sworn statements disclosed "nothing further of value," and thus more settlement discussions "would be futile and cause further delay to the resolution of this matter." (ECF 92 at 2).

In May 2023, however, Plaintiff again sought a conference to set a date for Defendant's deposition. (ECF 97). In this letter, Plaintiff reiterated their intent to schedule depositions of Defendant's wife, "a representative from Stanford University," and others. *Id.* (*See also* ECF 94).

11

Defendant had already adjourned his scheduled deposition twice, once on short notice, on grounds that he was seeking representation and did not wish to be deposed without counsel. (ECF 94).

The parties limped to the finish line of discovery, but not without additional hiccups. The Court extended the discovery deadline to August 25, 2023, and directed the parties to submit a deposition schedule complying with that deadline that would then be "so ordered." (ECF 98). The Court entered the parties' joint proposed deposition schedule at ECF 101, which included representations that Defendant would proceed with his depositions whether or not he was able to secure counsel. (ECF 101). (*See also* ECF 103).

Defendant's wife, Amy Andersen, also sought to delay her deposition so that she could find counsel. She failed to appear at her Court-ordered deposition on August 18, 2023, without providing timely notice to Plaintiff, (*see* ECF 105), causing Plaintiff's counsel to incur yet more fees. Ms. Andersen was ordered to complete her deposition by August 25, 2023, or face sanctions. (*See* ECF 106).

On August 23, 2023, two days before the discovery deadline, Plaintiff again wrote to the Court, indicating that Defendant still had failed to complete or supplement his production. (ECF 107). On the same day, the Court issued another warning that Defendant and his wife would face monetary or equitable sanctions if they failed to comply with the August 25, 2023 discovery deadline, and that if they complied belatedly, it would only be considered in mitigation or modification of the amount of sanctions, and not in avoiding an award of sanctions altogether. (ECF 108). On August 24, 2023, the parties filed competing letters: Defendant proffered reasons for the delays and insufficient responses to Plaintiff's discovery

requests; Plaintiff identified that Defendant had uploaded approximately 1,000 pages of documents to a Google Drive, but complained that Defendant's responses were still deficient. (ECF Nos. 109, 110).

**B.** **Plaintiff's Instant Motion for Sanctions**

On November 3, 2023, the Court directed Plaintiff to file a letter on the status of discovery, and also to file a motion for sanctions if Defendant had failed to comply with prior orders. (ECF 112). Plaintiff's status letter indicated, *inter alia*, that Defendant had not addressed his discovery deficiencies until after November 7, 2023. (ECF 113). Plaintiff filed a renewed motion for sanctions—the instant motion—on November 17, 2023. (ECF 115). Defendant was directed to respond to the motion for sanctions by December 22, 2023. (ECF 116).

In Defendant's opposition, he acknowledged that he "still owe[s] $44,837[9] not including any Plaintiff's attorney fees." (ECF 117 at 2). Defendant acknowledged that while he was not "blameless," he had "tried to do the best [he could] to comply with the Court's orders and the discovery process more generally," and that he "[did not] believe that Plaintiff's Counsel has operated with fully 'clean hands.'" (ECF 117 at 5). He also asserted that Plaintiff's counsel "did not operate in good faith" in early 2023 to resolve the action, nor did they "work in good faith to respond in a timely manner to what I produced." (ECF 117 at 6). Thus, Defendant requested "that the Court facilitate a payment plan agreement . . . for the $44,837 remaining of the

---

[9] Defendant's calculation incorrectly includes a rounded-up-reduction for the $671.50 in fees and costs that the Court ordered Defendant to pay to Plaintiff's for their attendance at the February 16, 2022 conference. (ECF Nos. 58, 64 at 10:11–21). *See infra* n.16.

$99,000 obligation," but argued that fines, sanctions, and attorneys' fees would be "overkill".
(ECF 117 at 7). (*See also* ECF 68).

Plaintiff responded by setting out a final settlement proposal that included, *inter alia*,
payment of the principal obligation, reimbursement of "approximately $165,000 in attorneys'
fees," collateralization of the amounts owed, and other relief. (ECF 119). Defendant filed no
response, so the Court entered one final Order to Show Cause (ECF 120) on June 10, 2024, to
give Defendant one last chance to oppose entry of a default judgment and/or contempt by June
21, 2024. (ECF 120). Defendant was explicitly warned that an untimely submission would be
stricken. (ECF 120). Defendant responded on June 26, 2024. (ECF 121), raising substantially the
same arguments he had previously raised, and interpreting the most recent sanctions motion
as addressing only his failure to complete discovery by August 25, 2023, and not to his repeated
failures in this case. (ECF 121).

## III.    CONCLUSIONS OF LAW

### A.    <u>Sanctions Under Rules 16 and 37</u>

Rule 16 authorizes the imposition of sanctions—including those authorized by Rule
37(b)(2)(A)(i)–(vii)—when a party fails to appear at a court ordered conference, or fails to obey
a scheduling or other pretrial order. *See* Fed. R. Civ. P. 16(f), 37(b)(2)(A)(i)–(vii); *White v. Suffolk
County*, 20-CV-1501 (RER)(JMW), 2024 WL 2882842 at *17 (E.D.N.Y. 2024). Rule 37(a)(5)
provides a framework for payment or apportionment of expenses in connection with motions
to compel or for protective orders. Fed. R. Civ. P. 37(a)(5). An award of fees under Rule 37(a)(5)
is a discovery sanction, because "the offended adversary's counsel is not being rewarded for its
success in the litigation; rather, the adversary is simply being compensated for costs it should

14

not have had to bear." *Sillam v. Labaton Sucharow LLP*, 21-CV-6675 (CM)(OTW), 2024 WL

3518521 at * 1–2 (S.D.N.Y. 2024) (awarding over $146,000 in attorneys' fees for litigation

leading up to Court finding "bad faith violations" of promises made in connection with

discovery; quoting *Klipsch Group, Inc. v. ePRO E-Commerce Limited*, 880 F.3d 620, 634 (2d Cir.

2018)). Rule 37(b)(2)(A)(i)–(vii), in turn, sets out a range of nonmonetary sanctions for failure to

comply with discovery orders. As relevant here, Rule 37 authorizes sanctions in the form of

"striking pleadings in whole or in part," "rendering a default judgment against the disobedient

party," and "treating as contempt of court the failure to obey any order except an order to

submit to a physical or mental examination." Fed. R. Civ. P. 37(b)(2)(A)(iii), (vi), (vii).

## B. <u>Default Judgment</u>

The court may enter a default judgment when the noncompliant party has failed to

follow a court order due to due to willfulness, bad faith, or any fault, including gross negligence.

*See Valentine v. Museum of Modern Art*, 29 F.3d 47, 49 (2d Cir. 1994); *Cine Forty-Second St.*

*Theater Corp. v. Allied Artists Pictures Corp.*, 602 F.2d 1062, 1066 (2d Cir. 1979).

Among the factors to be considered when imposing sanctions are: (1) the party's history

of noncompliance; (2) the effectiveness of lesser sanctions; (3) whether a warning had been

issued regarding imposition of sanctions; and (4) whether imposing lesser sanctions would

prejudice the moving party. *See Batson v. RIM San Antonio Acquisition, LLC*, 15-CV-7576

(ALC)(OTW), 2022 WL 769706, at *2 (S.D.N.Y. 2022), *report and recommendation adopted*, 15-

CV-07576 (ALC), 2022 WL 767071 (S.D.N.Y. 2022). Although a single pretrial violation, such as a

single failure to timely respond to a document request, would not ordinarily result in a sanction

as severe as a default judgment, "it is well within the court's discretion to impose such harsher

sanctions where a defendant exhibits a continuing saga of dilatory conduct and where that party has had notice of the orders with which they failed to comply, paired with an opportunity to argue their case against the proposed sanction." *White*, 2024 WL 2882842 at *17 (internal citations and quotations omitted).

Applying the factors here, the Court finds that a default judgment is a necessary sanction under Rules 16 and 37. As detailed above (*see supra* § II), Defendant's history of noncompliance is lengthy. The "continuing saga of dilatory conduct" here spans more than three years across two judges. Defendant was first threatened with default judgment by Judge Marrero in May 2021, after Defendant first secured an extension of time to answer by representing that he was "in the midst of settlement negotiations," which Plaintiff disputed almost immediately. (*See* ECF 12, 13). Nonetheless, Defendant delayed filing his answer for nearly three months. (ECF 15, 16). Shortly after the parties consented to magistrate judge jurisdiction for all purposes, the parties engaged in settlement conversations to facilitate Defendant making the remaining payments under the SA, even though he had already defaulted on the payments ten months earlier. During those conversations, Defendant made several specific representations that payment was imminent, (such as, that he was only waiting for a required bank token (*see* Docket, Nov. 23, 2021 Letter from Defendant)) but no payments were made. (ECF Nos. 115 at ¶¶ 6–7, 115-2 at 4-7). Indeed, after payments totaling $53,491 were made between November 2 and December 17, 2021, no additional payments have been made. (*See* ECF 123 at 2).

Lesser sanctions have been ineffective. The mere threat of default and contempt was not enough to ensure Defendant's presence at the February 16, 2022 conference; indeed, he

did not even timely request an adjournment. After Defendant failed to attend the conference, the Court ordered payment of Plaintiff's fees and costs as a sanction under Rules (16)(f)(1)(A) and 37(b)(2)(A)(ii)–(vii) for Defendant's failure to appear, which Defendant did pay, but which did not have any other effect on Defendant's conduct. *See* Fed. R. Civ. P. (16)(f)(1)(A), 37(b)(2)(A)(ii)–(vii). In his opposition to Plaintiff's instant sanctions motion, Defendant has requested "that the Court facilitate a payment plan agreement," as an alternative. (ECF 117 at 7). Not a single payment plan to date, with or without the Court's engagement has been successful, so there is no evidence that a payment plan would make a difference at this time.

Defendant has been on notice for years of the consequences of noncompliance with the Court's orders, having been threatened with sanctions multiple times, to little effect. Defendant was explicitly threatened with default and contempt at least four times: by Judge Marrero in 2021, and three times by the undersigned, in ECF Nos. 40, 82, and 108. Plaintiff has filed three motions for sanctions, each time outlining Defendant's misrepresentations and his dissembling, and seeking monetary sanctions, default, and contempt. While those motions were denied as the parties tried, again and again, to restart settlement and obtain payment from Defendant, they were denied without prejudice to renewal if the parties were not able to reach agreement on payment terms. Like Charlie Brown with the football,[10] Plaintiff attempted again and again

---

[10] Even Charlie Brown apparently got one chance to kick the ball, however. *See* Eric Schulmiller, *All Your Life, Charlie Brown. All Your Life.*, Slate (Oct. 8, 2014, 9:33 AM), https://slate.com/culture/2014/10/the-history-of-lucys-pulling-the-football-away-from-charlie-brown-in-peanuts.html.

to secure additional payment for work it had done years before. Threat of sanctions—even severe ones—have clearly not been enough.[11]

Finally, Plaintiff continues to be prejudiced by the delay and inability to collect on money owed. Imposing lesser sanctions would not be sufficient; if this case were to proceed to trial, Defendant would only default. Entering a default judgment now would at least save Plaintiff the cost of preparing for trial. Defendant has not denied that he owes the amounts under the Settlement Agreement, and notwithstanding his ineffective arguments to the contrary, has already admitted that he owes Plaintiff's attorneys' fees. (*See, e.g.*, ECF 77 at 4).[12]

Defendant's history of noncompliance with Court orders is lengthy. He has failed to timely comply with virtually every Court order from the inception of this case. The imposition of lesser sanctions (in the form of Plaintiff's costs) for skipping the February 2022 conference did nothing to conform Plaintiff's behavior. In total, at least four warnings of default have been given, three of which have been threatened after Defendant failed to appear in February 2022. Finally, imposing lesser sanctions would prejudice the Plaintiff, who had taken Defendant at his word several times when he professed to be interested in discussing a settlement or a payment plan. As a result of Defendant's contumacious conduct, Plaintiff has been delayed for <u>four years</u> in recovering payment for services provided.

---

[11] The Court also finds implausible Defendant's bizarre argument that Plaintiff somehow acted in bad faith or tricked him into prolonging settlement discussions. (ECF 117). There was and continues to be no upside to Plaintiff to delay their award, and at least on two occasions the Court denied Plaintiff's motions to give Defendant an opportunity to complete his performance under the SA.

[12] Indeed, Plaintiff has expressed more than once the concern that Defendant has already transferred significant assets out of his name.

The Court further finds that Defendant has behaved willfully and in bad faith. The Complaint lists multiple times where Defendant assured Plaintiff in 2020 that "the check was in the mail"; Defendant made the same (mis)representations to the Court and Plaintiff in November 2021, when Plaintiff was seeking the balance of payments under the SA. Moreover, Plaintiff has shown that Defendant had, at times, access to funds that he could have used to pay the balance, or pay down the balance, but he chose not to do so. (*See* ECF 115-2 at 17).

Accordingly, I find that a default judgment should be entered as to all Counts in the Complaint.

## C. Contempt

### 1. Magistrate Judge Authority

When the parties have consented to a magistrate judge's exercise of plenary jurisdiction over an action pursuant to 28 U.S.C. § 636(c), "the magistrate judge may exercise the civil contempt authority of the district court." 28 U.S.C. § 636(e)(4). *See Leadsinger, Inc. v. Cole*. 05-CV-5606 (HBP) 2006 WL 2266312 at * 5 (S.D.N.Y. 2006) (collecting cases). Accordingly, to the extent that Plaintiff moves to hold defendant in civil contempt for violating the orders discussed above, I have the authority to adjudicate Plaintiff's motions.

Additionally, pursuant to 28 U.S.C. § 636(e)(3), I have the following criminal contempt authority:

> In any case in which a United States magistrate judge presides with the consent of the parties under subsection (c) of this section, ... the magistrate judge shall have the power to punish, by fine or imprisonment, or both, criminal contempt constituting disobedience or resistance to the magistrate judge's lawful writ, process, order, rule, decree, or command. Disposition of such contempt shall be conducted upon notice and hearing under the Federal Rules of Criminal Procedure.

19

28 U.S.C. § 636(e)(3). *See also Roell v. Withrow*, 538 U.S. 580, 593 (2003) (noting that "[28 U.S.C. § 636(e)(3)] grants magistrate judges the power to hold parties before them in contempt, but conditions the imposition of contempt sanctions 'upon notice and hearing under the Federal Rules of Criminal Procedure'").

### 2. Standard for Civil Contempt

It is firmly established that federal courts possess the inherent power to punish for contempt. *Leadsinger*, 2006 WL 2266312 at *8 (quoting Judge Motley in *D'Orange v. Feely*, 959 F.Supp. 631, 634–35, 637 (S.D.N.Y. 1997)). A court's inherent power to hold a party in civil contempt may only be exercised when "(1) the order the party allegedly failed to comply with is clear and unambiguous, (2) the proof of noncompliance is clear and convincing, and (3) the party has not diligently attempted in a reasonable manner to comply." *D'Orange*, 959 F. Supp. at 635 (citing *N.Y. State Nat. Organization for Women v. Terry*, 886 F.2d 1339 (2d Cir. 1989), *cert. denied*, 495 U.S. 947 (1990); *EEOC v. Local 638, Local 28 of Sheet Metal Workers' Int'l Ass'n.*, 753 F.2d 1172, 1178 (2d Cir. 1985), *aff'd*, 478 U.S. 421 (1986); *Nudelman v. Siag*, 1996 WL 451379, 2 (S.D.N.Y. 1996)). *See also ACLI Government Securities v. Rhoades*, 989 F. Supp. 462, 465 (S.D.N.Y. 1997). Civil contempt is a severe remedy, and the standard is an objective one; "a party's subjective belief that [he] was complying with an order ordinarily will not insulate [him] from civil contempt if that belief was objectively unreasonable." *Taggart v. Lorenzen*, 587 U.S. 554, 561 (2019).

Here, Plaintiff relies principally on the August 23, 2023 Order (ECF 108), which clearly and unambiguously required the Defendant to complete discovery (and his wife to sit for deposition, whether or not she had been able to retain counsel) by August 25, 2023, a date set

months earlier. (ECF 115-2 at 18). Earlier motions for contempt had also identified the February

8, 2022 order setting the February 16, 2022 in person conference (ECF 40) that Defendant failed

to attend. (ECF Nos. 62 at 16, 70 at 16).[13]

      Further, the proof of noncompliance with each of these orders is clear and convincing.

The noncompliance with ECF 40, setting the February 16 in-person conference, is clear:

Defendant failed to appear. Plaintiff has also shown noncompliance with ECF 108. (*See* ECF Nos.

109, 110). As early as 2021, Plaintiff sought a wide range of information related to Defendant's

financial condition in order to assess, *inter alia*, whether he had been truthful about his "ability

to pay for [Plaintiff's] services at the various times he made numerous representations that

payments were made and his current ability to pay his obligations." (ECF 107 at 3). On August

24, Plaintiff again wrote to the Court stating that although Defendant had uploaded

approximately 1,000 pages to a Google Drive, Defendant's responses to the document requests

themselves were still deficient. Defendant's response admits that he withheld documents due

to "an unwillingness to submit to embarrassment, expense, harassment and undue burden

masked in the form of a series of massively overbroad requests," and indicated that he was

prepared to "clarify [his] objections" if the Court held a conference. (ECF 110 at 3). Plaintiff's

status letter of November 10, 2023 indicated that Defendant had not provided complete

discovery by August 25, 2023 (ECF 113), and that, as of September 25, 2023, Defendant still had

not provided documents concerning his ability to pay and his re-employment by Stanford. (ECF

113 at 9–10) Finally, although Defendant represented on October 25, 2023 that he would

---

[13] Defendant has probably also violated the two REBNY Form orders (ECF Nos. 76 and 82), but the Court
does not consider them here.

produce redacted bank statements by October 12, 2023, they apparently were not produced until November 7, 2023, more than two months after the close of discovery. (ECF 113 at 2).[14]

Finally, the Court finds that Defendant has not diligently attempted in a reasonable manner to comply. Defendant never sought a timely adjournment of the February 16 conference, nor did he disclose to his adversary or the Court until the night before the conference that he would not be able to attend. The proffered excuse, relating to a "small child," travel on "short notice" and the need to make vague "domestic arrangements," are issues that challenge all working parents. And, as any working parent knows, last-minute "domestic arrangements" are difficult (though not impossible) to secure.[15] As for the discovery deficiencies, the latest of these document requests were propounded two months before the end of discovery, and earlier requests were propounded two <u>years</u> before. Defendant had months to meet and confer with Plaintiff and indicate his objections, and he provides no explanation for the delay other than "I have not been through this process before, I am not trained in it, but I am trying to learn quickly through observation and study." (ECF 110 at 2).

Accordingly, I find that Defendant is in civil contempt for his failure to comply with the orders at **ECF 40** and **ECF 108**.

---

[14] The Court also finds that the conduct described here subjects Defendant to liability for fees and expenses under Fed. R. Civ. P. 37(a)(5).

[15] The Court notes that other pro se parties—including individuals who do not have a law degree or the ability to speak English—have appeared for proceedings with their young children in tow when child-care was unavailable.

### 3. Standard for Criminal Contempt

Plaintiff also seeks criminal contempt if Defendant fails to pay financial amounts awarded in connection with their sanctions motions. "[T]he Court of Appeals for the Second Circuit has explained that "[a] trial court ordinarily first applies the coercive remedy of civil contempt and only makes use of the criminal sanction when the disobedience continues." *Leadsinger*, 2006 WL 2266312 at *22. (quoting *United States v. Petito*, 671 F.2d 68, 72 (2d Cir.1982). *See also In re de Kleinman*, 923 F.Supp. 24, 29 (S.D.N.Y.1996).

This request is premature. A defendant is entitled to Constitutional safeguards, such as notice and a hearing under Fed. R. Crim. P. 42(a) before a referral is made. Defendant is warned, however, that if he used the delay from persistent settlement discussions and discovery to place assets out of reach of creditors like the Plaintiff, the Court will find that he engaged in settlement discussions in bad faith, and **will consider a referral to the United States Attorney's Office of the Southern District of New York for criminal prosecution**. *See Leadsinger*, 2006 WL 2266312 at *22-23 (finding defendant in criminal contempt, outlining procedural requirements, and referring matter to U.S. Attorney's Office for investigation).

### D. Calculation of Damages

Plaintiff seeks: damages under the SA's default provisions, attorney's fees, also punitive damages, and pre- and post-judgment interest. (ECF 135-1 at Prayer for Relief). When a defendant has defaulted, the factual allegations—with the exception of those relating to damages—are taken as true. See *SEC v. Razmilovic*, 738 F.3d 14, 33 (2d Cir. 2013) (upholding disgorgement sanctions totaling over $7 million for Defendant's willful failure to appear at deposition). *See also Gavel v. Korang*, 20-CV-3475 (LJL)(VF); 2024 WL 4203732 at n.1 (S.D.N.Y.,

2024) (in inquest after default, factual allegations in complaint are deemed admitted "except as to damages").

"The compensatory goal of civil contempt sanctions is 'met by awarding to the plaintiff any proven damages.'" *Al Hirschfeld Foundation v. Margo Feiden Galleries Ltd.*, 438 F. Supp. 3d 203, 207 (S.D.N.Y. 2020) (cleaned up) (citing *Weitzman v. Stein*, 98 F.3d 717, 719 (2d Cir. 1996)). "This is because the purpose of compensatory sanctions is 'to make reparation to the injured party and restore the parties to the position they would have held had the [order] been obeyed.'" *Id.* (citing *Medina v. Buther,* 15 Civ. 1955 (LAP), 2019 WL 581270, at *26 (S.D.N.Y. 2019)). Remedies may include attorneys' fees to compensate the contempt victim. In this case, compensatory damages for the violation of two orders will be subsumed in the calculation of damages due under a default judgment.

### 1. Contract Damages

Defendant does not dispute that he failed to comply with the terms of the Settlement Agreement. The default provision of the Settlement Agreement, which the parties agree applies here, provides for a principal amount of $99,000 plus attorneys' fees and costs.

The parties also agree that Defendant made payments of $53,491 toward the $99,000 principal owed under the default provision of the settlement agreement, leaving a remaining principal of **$45,509**.[16]

---

[16] Defendant apparently applies the $672 in fees and costs ordered as a sanction on March 10, 2022 to the principal owed. This is incorrect because the $672 was a compensatory award of fees and costs awarded under the OSC for Plaintiff's appearance at the February 16 conference. If Plaintiff has not credited Defendant with this payment in its calculation of fees and costs, the Court will credit that amount to Plaintiff's calculated fees and costs.

The SA also provides for an award of attorneys' fees and costs in the event of a default. Plaintiff seeks a total of $ 158,235.07 in fees and costs from December 2020 through May 2024, and backing out the $671.50 that Defendant paid as a sanction for non-appearance at the February 16, conference. (ECF 123 at n. 2). Defendant claims, belatedly, that the SA is ambiguous, and that he interpreted the SA's attorneys' fees provision to "mean [Plaintiff's] costs and fees in enforcing the settlement agreement in the case of a default." (ECF 121 at 2). Defendant then asserts that because Plaintiff "did not file any motions to enforce the settlement agreement until November 17, 2023," (*id.*), Plaintiff cannot recover any fees incurred before that date.

This argument is without merit. First, in the Complaint, Plaintiff requested damages for breach of contract including reasonable attorneys' fees. (ECF 135-1 at Prayer for Relief (f)). Moreover, it has become clear that Defendant lied about forthcoming payment before the Complaint was filed (*see, e.g.*, *supra* § II.A.1–2) and also in settlement discussions with the Court (*see, e.g.*, *supra* § II.A.3), all of which led Plaintiff to incur more fees and costs. Nonetheless, the Court will, exercising its discretion, only award attorneys' fees and costs for work done after December 17, 2021, the date of the last payment by Defendant, since Defendant made four payments totaling $53,491 between November 2 and December 17, 2021, which suggested that Defendant would pay the remaining amounts due in short order.

The Court has reviewed counsel's billing records from December 18, 2021 through January 2024[17] and finds that the hourly rates and time spent on the matter are reasonable. All

---

[17] ECF 127-1 only provides invoices through January 2024, although counsel is entitled to fees and costs through May 2024.

of the timekeepers billed in 6-minute increments and hourly rates ranged from $███ to lead

counsel Ms. Paxton's rate of $███. The total billed in fees and costs from December 18 through

January 2024 total $121,742.80, of which $2,728.80 consisted of costs. Giving Defendant a

credit of $671.50 for fees and costs already paid brings the total compensatory award of fees

and costs to **$121,071.30**.

Accordingly, the total compensatory award for Defendant's default is **$166,580.30**.

Moreover, because the Court has found Defendant in civil contempt, has issued a warning

about criminal contempt, and is awarding pre- and post-judgment interest, an additional

monetary award of punitive damages is not warranted at this time.

### 2. Prejudgment interest

In a diversity case, pre-judgment interest is governed by state law. *Schipani v. McLeod*,

541 F.3d 158, 165 (2d Cir. 2008). Under New York law, a party is entitled to recover pre-

judgment interest on a sum awarded due to breach of contract at a rate of nine percent per

annum from "the earliest ascertainable date the cause of action existed." N.Y. C.P.L.R. §§ 5001,

5004. *See also Wechsler v. Hunt Health Sys., Ltd.*, 330 F. Supp. 2d 383, 434 (S.D.N.Y. 2004)

(citing *Trademark Research Corp. v. Maxwell Online, Inc.*, 995 F.2d 326, 342 (2d Cir. 1993) ("In

an action at law for breach of contract, 'prejudgment interest is recoverable as of right.'").

Here, the Court will use December 18, 2021, the day after the last payment made by Defendant

as the beginning date. Accordingly, Plaintiff should be awarded pre-judgment interest of nine

percent per annum from December 18, 2021 through September 30, 2024, the date that this

judgment is entered, for a total of **$41,772.86** [$41.0745/ day (($166,580.30 damages × 0.09) /

365 days per year)) x 1017 days].

### 3. Post-Judgment Interest

Plaintiff also seeks an award of post-judgment interest. In this Circuit, an award of post-judgment interest is mandatory on any money judgment in a civil case recovered in a district court. 28 U.S.C. § 1961. *See Schipani*, 541 F.3d at 165. Post-judgment interest is calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment. 28 U.S.C. § 1961. Accordingly, I award post-judgment interest from September 30, 2024, until the date such judgment is paid, using the federal rate as set forth in 28 U.S.C. § 1961.

## IV.  CONCLUSION

Based on the foregoing the Court **ORDERS** and **ADJUDGES**:

Judgment of default shall be entered against Defendant Alexander S. Gould as follows:

    a. **Damages: $166,580.30**;

    b. **Pre-Judgment Interest**, from December 18, 2021 to September 30, 2024: **$41,772.86**; and

    c. **Post-Judgment Interest**, from September 30, 2024, until the date of payment, using the federal rate as set forth in 28 U.S.C. § 1961.

The Court also holds Defendant in **CIVIL CONTEMPT** for his violation of **ECF 40** and **ECF 108**. Because the damages award contains compensation to Plaintiff for work caused by the violation of these orders, the Court declines to impose an additional fine, or other monetary sanctions at this time.

The Court declines to hold Defendant in criminal contempt at this time.

The Clerk of Court is respectfully directed to enter judgment in accordance with this

Opinion, close all outstanding motions, and close the case.

**SO ORDERED.**


_s/ Ona T. Wang_

Dated:  September 30, 2024
      New York, New York

**Ona T. Wang**
United States Magistrate Judge